UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KEVIN COBBINS                                      CIVIL ACTION

VERSUS                                             NO: 23-04923

BRG HOSPITALITY GROUP LLC                          SECTION: T (3)

## ORDER AND REASONS

This is an action for retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Title 23 of the Louisiana Revised Statutes, La. R.S. 23:334 and 23:967, known as the Louisiana Whistleblower Statute. Before the Court is a Motion for Summary Judgment filed by Defendant BRG Hospitality Group, LLC. R. Doc. 30. Plaintiff Kevin Cobbins had filed a response opposing the Motion. R. Doc. 38. Defendant has filled a reply in support of its Motion. R. Doc. 39. After reviewing the briefs, the record, and the applicable law, the Court will grant the Motion for Summary Judgment.

**BACKGROUND**

Plaintiff Kevin Cobbins, who is African American, had been working for Defendant, which owns a number of restaurants, for some ten to eleven years prior to his alleged retaliatory and wrongful discharge in September of 2020. R. Doc. 1, p. 3. During the Covid-19 pandemic, Plaintiff claims he agreed to a transfer for a limited time from the restaurant at which he had been working, Luke, to another restaurant, Cho Thai, to assist the company. *Id.*, p. 4. He claims that after two

1

months of working at Cho Thai, he repeatedly requested to receive training from a seasoned server at Cho Thai to learn the menu. *Id.* He claims his requests were denied even though such training had been offered to Caucasian employees with the same or similar positions. *Id.* Plaintiff claims that, when he reported the discriminatory treatment to Defendant, he was admonished and was given inconsistent and inaccurate information regarding his different treatment. *Id.* Plaintiff claims he had been assured by the general manager at Luke that he could return to his position there and gave his two-week notice to Cho Thai with the intention of returning to Luke. *Id.*, pp. 4-5. Defendant, however, considered this notice to be Plaintiff's resignation from the restaurant group and placed him on an ineligible-to-rehire list per its policy. *Id.*, p. 5. Plaintiff alleges he had been an exemplary employee, and Defendant knew he desired to return to Luke rather than resign from the group. *Id.* He claims he was placed on the ineligible-to-rehire list and not allowed to return to work because he had reported the discriminatory treatment he received while working at Cho Thai. *Id.*

According to Defendant, after the Covid-19 furlough, it sought to return Plaintiff to work by – (1) offering him a position on the skeleton crew re-opening Lüke Restaurant – which he declined; (2) discussing a potential position (when one became available) in the manager in training program with him; and (3) offering him a position as an expeditor (food runner) and busser at its newly-opened Cho Thai restaurant with the potential to move to server after learning the menu. Plaintiff accepted that position and started around July 21, 2020. At Cho Thai, Defendant's General Manager Kayla Himel provided Plaintiff multiple opportunities, encouragement, and as

2

much time as he needed to take the requisite Cho Thai menu test to be a server at Cho Thai and earn tips, but Plaintiff repeatedly delayed taking the menu test for reasons unknown to Defendant.

By early September 2020, Plaintiff notified Defendant that he was searching for work outside of BRG and reducing his schedule at Cho Thai because the restaurants were slow, and he needed more money to support his family. He also mentioned taking the menu test but did not do so. On September 11, 2020, Plaintiff asked if he could shadow train "on the floor" with a server before taking the test as he had allegedly noticed a "new guy" doing. Because he had successfully performed as a server for over a decade, Himel assured him he did not need to complete that training and only needed to study and take the menu test before moving to the server position. In response, Plaintiff texted "it looked like you are getting fully st[affed] [sic] now do you mind if I give you a 2 week notice?" Defendant accepted his two-week notice as his resignation, notated it in the system, marked him ineligible for rehire for six months in accordance with its practice for resigning employees, and moved forward with hiring (as planned when he was reducing his schedule).

A week later, Plaintiff apologized and attempted to rescind his resignation and stay at Cho Thai to learn more about the expo position. However, Plaintiff had already resigned which per BRG practice meant he was ineligible for rehire for the six month "cooling off" period, and Cho Thai had already hired staff. Defendant met with Plaintiff to explain this to him and reiterate that it had accepted his resignation, but he could reapply in the future. It was only on his last day, after this meeting, that Plaintiff claimed, for the first time, that he was racially discriminated against

3

because he had asked if he could train on the floor as an unidentified White coworker allegedly had and was not permitted to "transfer" to another restaurant as an Asian coworker had.

**LAW and ANALYSIS**

Plaintiff filed suit against Defendant asserting a claim for retaliatory discharge and wrongful termination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Louisiana state law claims. R. Doc. 1. Title VII prohibits employment discrimination based on a person's "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and prohibits retaliation against individuals for reporting or complaining about such discrimination, *id.* § 2000e-3(a). Plaintiff has limited his claim to one for retaliation rather than discrimination. *See* R. Doc. 38, p. 4. Title VII requires a plaintiff to exhaust administrative remedies by filing a Charge of Discrimination with the EEOC "within [180] days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021). In this case, Plaintiff has satisfied the jurisdictional requirement, receiving a Notice of Right to Sue, and timely filing his suit. *See* R. Doc. 1, p. 2.

Plaintiff claims that he was retaliated against after reporting racial discrimination. Title VII makes it unlawful for an employer to retaliate against, or discharge, an employee who opposes an employment practice that violates Title VII. 42 U.S.C. § 2000e–3(a). To prevail on such a claim for retaliation under Title VII, a plaintiff must show that, "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766-67 (5th Cir.

4

2017) (citing *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015)). Summary judgment is proper if a plaintiff fails to support any of these three elements. *Jordan v. Downtown Development District*, Civ. Action No. 21-1323, 2024 WL 1179082, * 7 (E.D. La. March 19, 2024).

Defendant has filed a Motion for Summary Judgment, asserting that Plaintiff cannot establish a prima facie case of retaliation because he did not engage in protected activity and no adverse employment action was then taken against him.

Plaintiff maintains he has produced competent summary judgment evidence that: (1) he participated in protected activity by protesting perceived discrimination against him by being refused the ability to shadow train like his white coworker and refused a transfer back to Luke while other employees were allowed to do so without issue; (2) the employer's awareness of the participation, here Plaintiff repeatedly requesting the training from his Manager, emailing and texting her and being refused the same before escalating his concerns to the HR Director, Dawn Hazen; (3) Plaintiff suffered an adverse employment action thereafter when he was terminated from BRG and placed on the ineligible for rehire list, in addition to preventing him from assuming his newly-promoted role as manager in training; and (4) a causal connection between the adverse employment action and the protected participation or conduct. R. Doc. 38, pp. 6-7.

Summary judgment of a claim is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A court must hold "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law." *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)). When assessing whether a genuine dispute as to any material fact exists, courts "consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Accordingly, at the summary judgment stage, courts must view the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See, e.g., Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 603 (2015); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Of course, "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation and citation removed). Although the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, if it can carry that burden, the nonmoving party must "go beyond the pleadings and ... designate specific facts showing that there is a genuine issue for trial." *Celotex*,

6

477 U.S. at 323–24. This burden is not satisfied by "metaphysical doubt as to the material facts" or only a "scintilla" of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)). Summary judgment must thus be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. As the United States Supreme Court has explained, "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. Courts "do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990)) (emphasis original). Thus, "summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id.* (quoting *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993)) (emphasis original).

Here, Defendant points out that Plaintiff did not claim race discrimination until after his resignation was submitted and accepted by Defendant. At most, Plaintiff on September 11, 2020, had requested training on "selling the food" under an experienced server "like the new guy." But his supervisor pointed out that he did not need such training because he was an experienced server himself. Plaintiff only needed to take the "menu test" as required of all employees to be promoted

7

to server. Plaintiff noted he needed to earn more money and voluntarily submitted his resignation that day. He now claims that he intended only to resign from Cho Thai so that he could transfer back to Luke. However, as Defendant points out, Plaintiff had also indicated he wanted to do other work outside of the BRG group, he knew that he was employed by the BRG group and not Cho Thai, and he did not distinguish between Cho Thai and Luke in his resignation text. Notwithstanding his subjective intent, there is no allegation of a constructive discharge, nor could Plaintiff make such showing. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). "To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id.* (internal quotation marks omitted) (quoting *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir.1997)). Thus, Plaintiff has not established an adverse employment action against him.

Nor has Plaintiff established an adverse employment action with regard to his failed attempt to rescind his resignation. Although he did later seek to withdraw his resignation, he was informed that his resignation had already been accepted and that he had been placed on the ineligible-to-rehire list as per BRG policy, though he could be rehired after a six-month cooling-off period. It was only after Plaintiff met with the company and this policy was again explained to him that he first made a claim of discrimination with regard to the training and with regard to another employee being allowed to transfer. The Court agrees that there is no showing of retaliation in the Defendant's acceptance of Plaintiff's resignation and placing him on the ineligible-to-rehire list, because the alleged protected activity – the reporting of discrimination – did not occur until

after his resignation had been accepted.

At any rate, Plaintiff certainly has pointed to no evidence in the summary judgment record before this Court that would support a causal connection between the alleged protected activity and the adverse employment actions he claims he suffered. At most he made a vague complaint about the lack of training, voluntarily resigned, and then attempted to rescind his resignation. But the record shows that he made no claim of racial discrimination until after he voluntarily resigned, after he was marked as temporarily ineligible for rehire, after he attempted to rescind his resignation, and after his meeting with Defendant at which it was reiterated that the company had accepted his resignation.

Defendant has demonstrated the absence of evidence to support the elements of Plaintiff's Title VII claim, and Plaintiff has failed to direct this Court to any evidence that establishes a genuine dispute as to any material fact. Thus, Defendant is entitled to summary judgment as a matter of law. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE. A judgment to that effect will be entered in favor of Defendant.

New Orleans, Louisiana, this 30th day of September 2025.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

9